UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Respondent, | ) ) ) |
| v. | ) Case No. 4:20-cr-40022-SLD-6 |
| CORTEZ DEANGELO COOPER, | ) ) ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court is Defendant-Petitioner Cortez Deangelo Cooper's motion under 28 U.S.C. § 2255 ("2255 Motion"), ECF No. 263. For the reasons that follow, the motion is DENIED.

BACKGROUND

On August 25, 2020, a criminal complaint was filed charging Cooper with conspiracy to distribute and possess with intent to distribute at least 280 grams of cocaine base, that is, crack. Cr. Compl., ECF No. 1. Attorney Jack Dusthimer was appointed to represent him. Aug. 31, 2020 Text Order. On September 16, 2020, the grand jury returned an eight-count superseding indictment[1] against Cooper and five co-defendants. *See generally* Superseding Indictment, ECF No. 56. Cooper was charged with conspiracy to distribute cocaine and at least 280 grams of crack in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 and two counts of distribution of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. Superseding Indictment 2, 5. Cooper pleaded guilty to all three charges. Apr. 1, 2021 Text

---

[1] Cooper's five co-defendants had previously been indicted before the complaint was filed against Cooper. *See* Indictment, *United States v. Bogan*, 4:20-cr-40022, ECF No. 18.

1

Order.  On March 31, 2022, he was sentenced to 135 months of imprisonment.  Judgment 1–3, ECF No. 239.

Cooper filed the instant 2255 Motion in December 2022.  He argues that he received ineffective assistance of counsel in violation of the Sixth Amendment because Dusthimer failed to raise certain objections to the second revised presentence investigation report ("PSR") that Cooper asked him to raise.  *See* 2255 Mot. 2–3.  The Government argues that "Cooper's motion is contradicted by the record and lacks merit."  Resp. 14, ECF No. 291.  Cooper filed a reply in support of his motion.  Reply, ECF No. 298.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  U.S. Const. amend. VI.  Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  This test requires a

defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The defendant "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

II.     Analysis

Cooper argues that he advised his counsel he wanted to object to attribution of "9.5 kilos of cocaine and 10 kilos of cocaine" to him in the second revised PSR and that had counsel raised such objections and those amounts had been removed from the total drug quantity he was held accountable for, he would have received a "considerably shorter" sentence. 2255 Mot. 3–4. Cooper refers to these amounts as being "reassert[ed]" and suggests that they had been removed in a first revised PSR. *Id.* at 4. Cooper also suggests that counsel "made no mention of" the objections Cooper wanted him to make during the sentencing hearing. *Id.* Cooper's motion demonstrates a misunderstanding of the record. Accordingly, before addressing Cooper's specific arguments—and to provide context for those arguments—the Court lays out the record in more detail.

### A. PSR Proceedings and Sentencing

An initial PSR was filed in June 2021. Initial PSR 1, ECF No. 148. This PSR assigned a base offense level of 38 based on holding Cooper responsible for 20.77 kilograms of cocaine and 24.586 kilograms of crack. *See id.* ¶ 73. The following were included in the total drug quantity: 4.77 kilograms of cocaine and 4.77 kilograms of crack based on an estimate of a cooperating source's twice weekly purchases from the co-conspirators, *id.* ¶ 40; 15.5 kilograms of cocaine and 15.5 kilograms of crack based on an estimate of a cooperating defendant that he purchased an ounce each of cocaine and crack daily for about 18 months from a co-conspirator, *id.* ¶ 41; 500 grams of cocaine based on that cooperator's statement about a particular purchase from the co-conspirator, *id.*; 1.2 kilograms of crack based on another cooperating source's statement about purchases from Cooper, *id.* ¶ 42; 182 grams of crack based on another cooperating source's statement about purchases from a co-conspirator in 2017, *id.* ¶ 43; 364 grams of crack based on the source's statements about purchases from the co-conspirator in 2018 and 2019, *id.*; 1.47 kilograms of crack based on the source's statement that he cooked powder cocaine into crack for the co-conspirator, *id.*; and 1.1 kilograms of crack based on another source's statement about purchases from Cooper, *id.* ¶ 45.

After a two-level enhancement for possessing a firearm and a three-level reduction for acceptance of responsibility, this PSR listed a total offense level of 37. *Id.* ¶¶ 74–82. Cooper's criminal history category was listed as III, *id.* ¶ 89, and, accordingly, this PSR listed his Sentencing Guidelines range for imprisonment as 262 to 327 months, *id.* ¶ 140.[2]

A revised PSR was filed in October 2021. *See* Revised PSR 1, ECF No. 202. The revised PSR listed the same offense level based on the same drug quantity, the same criminal

---

[2] The maximum term of imprisonment for the distribution counts was twenty years, so the Sentencing Guidelines range for imprisonment on those counts was 240 months. Initial PSR ¶ 140.

history category, and, accordingly, the same Guidelines range. *See id.* ¶¶ 74–83, 90, 141. The drug quantity was based on the same transactions and estimates as in the original PSR. *See id.* ¶ 41 (4.77 kilograms of cocaine, 4.77 kilograms of crack); *id.* ¶ 42 (15.5 kilograms of cocaine, 15.5 kilograms of crack, 500 grams of cocaine); *id.* ¶ 43 (1.2 kilograms of crack); *id.* ¶ 44 (182 grams of crack, 364 grams of crack, 1.47 kilograms of crack); *id.* ¶ 46 (1.1 kilograms of crack). In the revised PSR, Cooper objected to the drug weight and resulting base offense level, noting his objection was "to the foreseeability of the activity of other co-conspirators and other factors." *Id.* at 31. He also objected to the firearm enhancement. *Id.* at 32.

A second revised PSR was filed in January 2022. *See* Second Revised PSR 1, ECF No. 232. This PSR assigned a base offense level of 36 based on holding Cooper responsible for 8.54 kilograms of crack and 24.57 kilograms of cocaine. *Id.* ¶ 77. Accordingly, the total offense level was listed as 35. *Id.* ¶ 86. Cooper's criminal history category was still listed as III, *id.* ¶ 93, so the Sentencing Guidelines range for imprisonment was listed as 210 to 262 months, *id.* ¶ 144.[3] Some of the drug quantities previously attributed to Cooper were left out of the total in the second revised PSR, *see id.* ¶¶ 38–39 (noting that the 15.5 kilograms of cocaine, 15.5 kilograms of crack, and 500 grams of cocaine that were previously attributed to Cooper were based on transactions that predated the conspiracy); *id.* ¶ 43 (noting that the 182 grams of crack and 364 grams of crack previously attributed to Cooper were no longer included in the total drug weight "to avoid double-counting"), and two quantities were added. First, at least 10 kilograms of powder cocaine based on estimates that Cooper purchased multi-kilogram amounts of cocaine from his father. *Id.* ¶ 45. And second, 9.8 kilograms of cocaine based on co-defendants Brandon and Christopher Pullman's purchase from a "source known as Weezy." *Id.* ¶ 46. Cooper's

---

[3] For the distribution counts, the Guidelines range was capped at 240 months as that was the statutory maximum term of imprisonment. Second Revised PSR ¶ 144.

purchases from his father were described in the initial and first revised PSRs but not included as part of the total drug weight because "[t]he exact amount of cocaine that [Cooper] acquired from his father in 2018-2019 is unknown." Initial PSR ¶ 40; Revised PSR ¶ 41 (same). The 9.8-kilogram purchase by the Pullmans was described for the first time in the second revised PSR.

Cooper again objected to the drug weight, arguing that "he was in custody starting July 2018, and out of the half-way house in July 2019" so he "should not be held accountable for drug transactions that occurred during that time frame." *Id.* at 32. Counsel indicated that he would file a sentencing memorandum to elaborate on the objection, *id.*, but none was filed. Cooper also again objected to the firearm enhancement. *Id.* at 33.

At the sentencing hearing, Cooper confirmed that he "had sufficient time to review [the] second revised PSR and discuss it" with Dusthimer. Sentencing Hr'g Tr. 6:22–25, ECF No. 279. He also affirmed that Dusthimer "raised all the objections that [he] ha[d] to its contents." *Id.* at 7:1–3. There was then some discussion about the nature of those objections. The Government was asked whether it had any evidence to present with respect to Cooper's objections. *See id.* at 10:17–11:4. The Government indicated its belief that Cooper was not disputing the facts laid out in the PSR but rather arguing "that he wasn't involved in the conspiracy while in custody." *Id.* at 11:17–21. It characterized his argument as being that he withdrew from the conspiracy, which is a legal argument. *Id.* at 11:21–12:8. The Court asked Dusthimer whether that was accurate. *Id.* at 12:9–13. Dusthimer responded that his argument was in part factual because part of the argument was that since one police witness did not list Cooper as a member of Money Team—which was identified in the PSR as the name the group of conspirators went by, Second Revised PSR ¶ 40—Cooper should not be held responsible for drug weight attributed to "Money Team." Sentencing Hr'g Tr. 12:17–13:13. The Court stated that it did not think this was a proper factual

6

dispute. The Court stated that to make an adequate factual dispute—thus requiring the Government to put on evidence—Cooper would need to "challeng[e] the facts contained in [a] particular paragraph [on the basis that he was] not responsible because he did not participate in what's described." *Id.* at 20:11–22; *id.* at 21:7–9 ("I need to know if he's saying, *I didn't do that.* If he says, *I didn't do that,* what is the basis for claiming he didn't do that?"). The Court gave Dusthimer time to confer with his client. *Id.* at 21:18–21, 23:11–15.

After conferring, Dusthimer stated that they were "just going to argue sufficiency regarding the proper application of the eight months that he was actually in custody and the time he was in the halfway house, but not raising further objection to that." *Id.* at 23:21–24:1. The Court confirmed with Dusthimer that this was an objection to the drug quantity listed in the PSR as opposed to an argument under the factors listed in 18 U.S.C. § 3553(a), though it also noted that Dusthimer was free to make an argument under those factors. *Id.* at 24:19–25.

When the Court reached the point where it would rule on Cooper's objections, it asked if either side had any evidence. *Id.* at 66:12–15. Dusthimer said, "No, I believe it's down to 3553(a)." *Id.* at 66:16–17. The Court sought clarification because it thought Cooper "still wanted to make an argument regarding what was reasonably foreseeable to [him] or what should be attributed to him because of withdrawal." *Id.* at 66:23–67:4. The Court gave Dusthimer time to confer with his client, *id.* at 67:15–19, after which he withdrew the remaining objection to the drug quantity based on Cooper's incarceration, *see id.* at 67:20–23. The Court asked Cooper if he had had "sufficient time to discuss strategy with [his] attorney," and Cooper affirmed that he had. *Id.* at 67:24–68:2. The Court asked Cooper if withdrawing his objection was how he wanted to proceed, and Cooper affirmed that it was. *Id.* at 68:3–5.

The Court then denied Cooper's objection to the firearm enhancement, *id.* at 74:15, and adopted the second revised PSR, *id.* at 74:16–75:23. The Court announced that it would apply a 1:1 ratio between cocaine and crack, as requested by Cooper, *see id.* at 115:12–18, and sentenced Cooper based on a hypothetical Guidelines range of 135 to 168 months based on a drug offense level of 32, *id.* at 115:4–13. It sentenced Cooper to the low end of this range, 135 months of imprisonment. *Id.* at 132:3–6.

### B. Cooper's Arguments

It is clear that much of Cooper's 2255 Motion is based on misstatements—or perhaps a misremembering—of facts. For example, Cooper contends that Dusthimer objected to the initial PSR's drug quantity, that the total quantity was changed as a result, and then the second revised PSR "amend[ed] the drug quantity upward." 2255 Mot. 2. But in reality, the initial PSR contained no objection to the drug quantity. The drug quantity was exactly the same between the initial and first revised PSRs and the total drug quantity in the second revised PSR actually went down. Cooper also contends that probation "reassert[ed]" certain drug amounts in the second revised PSR and that counsel should have "reasserted . . objections" to those amounts. 2255 Mot. 4; *see also id.* ("Mr. C[o]oper advised his counsel that the probation department was playing fast-and-loose by revising the presentence report and reasserting the drug quantities that had been removed."). But the two drug amounts that were added to the total drug quantity in the second revised PSR were included in the total quantity for the first time in the second revised PSR.

Nevertheless, the Court endeavors to address the specific arguments Cooper makes with respect to two drug amounts for which he was held responsible.

### 1. 9.5 Kilograms

Cooper first contends that Dusthimer was ineffective for failing to object to 9.5 kilograms of cocaine that was included in the total drug quantity on the basis that Cooper was incarcerated at the time of the transaction, so it was not reasonably foreseeable to him or because he had withdrawn from the conspiracy. *See id.* at 1–3; Reply 1–2. No PSR mentioned a 9.5-kilogram transaction, so the Court presumes Cooper is referring to the 9.8- kilogram purchase by the Pullmans in 2019 that was included in the second revised PSR for the first time.

Cooper's claim is contradicted by the record. Dusthimer did make an objection to the drug quantity in the second revised PSR, specifically arguing that Cooper should not be held accountable for drug transactions that occurred while he was in custody and in a halfway house between July 2018 and July 2019. Second Revised PSR 32. However, as explained above, Dusthimer withdrew this objection after conferring with Cooper, and Cooper confirmed that he had sufficient time to discuss the strategy with Dusthimer and wished to proceed that way. Given his express consent to the strategy after conferring with Dusthimer, the Court fails to see how Cooper can claim ineffective assistance on this basis. *Cf. United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel.").

Nevertheless, even if it were deficient performance not to proceed on the objection, no prejudice resulted because the Court would have denied the objection. Cooper contends that the transaction was not reasonably foreseeable to him because he was incarcerated when it occurred and he did not take part in it, *see* 2255 Mot. 1, or because "his custodial status equates to a withdraw[a]l," *id.* at 2. The withdrawal argument is clearly unmeritorious. "[T]he mere fact of .

9

. . incarceration [i]s insufficient to show withdrawal [from a conspiracy], which requires some affirmative volitional act." *United States v. Nava-Salazar*, 30 F.3d 788, 799 (7th Cir. 1994).

The reasonable foreseeability argument is unmeritorious as well. "In a drug conspiracy, the defendant is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to him." *United States v. Freeman*, 815 F.3d 347, 353 (7th Cir. 2016) (quotation marks omitted). And here, Cooper pooled his money together with his coconspirators to purchase large quantities of drug and resold them in smaller quantities. Second Revised PSR ¶ 42. Proceeds from those sales were pooled and reinvested to purchase more drugs and so forth. *Id.* Cooper was involved the conspiracy before his incarceration, *see id.* ¶ 43 (stating that a cooperating source bought half an ounce of crack two times a week from Cooper from 2015 through July 2018), and continued his involvement when he was released from custody, *id.* ¶ 47 (stating that a confidential source "started buying crack . . . from [Cooper] after [he] was released from custody"). Nothing about the mere fact that he was incarcerated means other conspirators' conduct was not reasonably foreseeable to him. *See United States v. Turner*, 604 F.3d 381, 388 (7th Cir. 2010) (noting that since the defendant did not withdraw from the conspiracy, he "could have been held accountable for heroin sold while he was incarcerated"). No prejudice resulted from counsel's failure to proceed on the objection that Cooper should not have been held responsible for drug transactions that occurred while he was incarcerated.

**2. 10 Kilograms**

Cooper next contends that he told Dusthimer that he must object to the second revised PSR's attribution of 10 kilograms of cocaine to him "because [the Government] could not provide an estimated amount" and that Dusthimer was ineffective for failing to do so. 2255 Mot.

1–2. The second revised PSR included in the total drug quantity an estimate of at least ten kilograms of cocaine that Cooper obtained from his father. Second Revised PSR ¶ 45. The basis for the objection Cooper wishes Dusthimer would have made is unclear. The Court surmises that Cooper is referring to the fact that previous versions of the PSR described the same statements by sources but that "[t]he exact amount of cocaine that [Cooper] acquired from his father in 2018-2019 is unknown therefore, it will not be included." *See, e.g.*, Revised PSR ¶ 41. But nothing prevented probation from including the estimated ten kilograms in the total drug quantity in the second revised PSR even though it did not include it in the earlier PSRs.

And nothing prevented the Court from relying on such an estimate. The Court was required to make an explicit drug quantity finding, *see United States v. Claybrooks*, 729 F.3d 699, 706 (7th Cir. 2013), which it did by adopting the second revised PSR, *id.* ("Ordinarily, a court's adoption of the PSR findings would be enough to satisfy [the Seventh Circuit] that the district court rendered a specific determination of the amount of drugs involved."). Calculating the total amount of drugs involved in an offense "is an inexact science," so the Seventh Circuit "allow[s] some room for reasoned speculation and reasonable estimation." *United States v. Saunders*, 826 F.3d 363, 374 (7th Cir. 2016) (quotation marks omitted). Courts are "encourage[d] . . . to make conservative estimates." *United States v. Henderson*, 58 F.3d 1145, 1152 (7th Cir. 1995). That is just what the Court did here. The PSR included a few cooperators' statements about drugs Cooper obtained from his father. For instance, one cooperating defendant indicated that Cooper "obtained five kilograms to ten-kilogram amounts of cocaine from his father . . . and distributed it . . in the Quad Cities." Second Revised PSR ¶ 45. Christopher Pullman stated that he traveled with Cooper to obtain multiple kilograms of cocaine from Cooper's father five to ten times. *Id.* And another cooperating defendant stated that in

11

2017, Cooper received kilogram amounts of cocaine from his father. *Id.* From these statements, the PSR included a "conservative estimate" that Cooper had received at least 10 kilograms of cocaine from his father. The Court relied on that as part of its total drug quantity finding, which was permissible.

Accordingly, if Cooper's argument is that the Court could not rely on an estimate, he cannot show ineffective assistance of counsel for failure to make that argument. And if his argument is merely that probation should have been held to the earlier PSRs' failure to include an estimate of this drug weight, he cannot show ineffective assistance of counsel for failure to raise that argument either.

### III.   Evidentiary Hearing

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the . . . record[] . . . conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This means that "a district court must grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (emphasis and quotation marks omitted). No hearing is required, however, "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quotation marks omitted). No evidentiary hearing is required here because the record and motion show that Cooper is entitled to no relief.

### IV.   Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial

of a constitutional right." 28 U.S.C. § 2253(c)(2).  Cooper fails to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Cortez Deangelo Cooper's motion under 28 U.S.C. § 2255, ECF No. 263, is DENIED.  The Clerk is directed to enter judgment and close the accompanying civil case, No. 4:22-cv-04181-SLD.

Entered this 8th day of January, 2024.

                                                                                               s/ Sara Darrow
                                                                                               SARA DARROW
                                                     CHIEF UNITED STATES DISTRICT JUDGE